**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **ELLEN McALPINE, on behalf of herself,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:26 C 50284** |
| | ) | |
| **CONNEXUS CREDIT UNION,** | ) | **Judge Rebecca R. Pallmeyer** |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Ellen McAlpine ("McAlpine"), a former employee of Connexus Credit Union ("Defendant"), brings this suit against Defendant for various forms of employment discrimination and retaliation. She asserts claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"); the Illinois Whistleblower Act, 740 ILCS 174/1 *et seq.* ("IWA"); the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3) ("FLSA"); and the Illinois common-law tort of intentional infliction of emotional distress. For reasons explained below, Defendant's motion to dismiss [17] is granted in part. Count II of McAlpine's First Amended Complaint ("FAC") is dismissed without prejudice to the filing of an amended complaint within 14 days. Counts I and III survive this ruling, but McAlpine is directed to file, within 14 days, copies of her charge of discrimination and Notice of Right to Sue from the Equal Employment Opportunity Commission ("EEOC").

## BACKGROUND

For purposes of Defendant's motion to dismiss, the court accepts all well-pleaded factual allegations in the FAC as true and draws all reasonable inferences from those facts in McAlpine's favor as the non-moving party. *Atlanta Gas Light Co. v. Navigators Ins. Co.*, 164 F.4th 1038, 1046 (7th Cir. 2026) (citing *Smykla v. Molinaroli*, 85 F.4th 1228, 1234 (7th Cir. 2023)).

Defendant Connexus employed McAlpine in the position of Mortgage Lending Manager from approximately April 2023 until August 2024. (Am. Compl. [8] ¶ 10.) McAlpine was over the

age of 40 at the time she was hired. (*Id.* ¶ 11.) McAlpine managed a team of employees, and her management responsibilities included overseeing and keeping track of her employees' timecards. (*See id.* ¶¶ 13, 17, 18, 21.) She alleges that Human Resources staff and Ariel Hubbert,[1] McAlpine's manager, instructed her "to not allow employees to work more than 40 hours in a given week, and to change the time sheets, and utilize 'flex time' so there was no overtime that was reported." (*Id.* ¶ 17.) She explains that "'Flex time' is when an individual does not work a full number of hours in one days s in one day and the time is made up weekly and not to exceed forty (40) hours. In some instances, the flex time ran into the next weeks." (*Id.* ¶ 16.) McAlpine does not explain whether she changed employees' timecards by crediting them with "flex time'" or instead simply falsified employees' timecards to avoid reporting overtime work; she does clearly assert, however, she "had to change the timecards on a regular basis for employees," and that she did so at Hubbert's request. (*Id.* ¶ 18.)

Connexus's Human Resources department contacted McAlpine and, on or about July 30, 2024, suspended McAlpine with pay pending an investigation. (*Id.* ¶¶ 23, 24.) The complaint itself does not identify what it was that was being investigated, but in its motion to dismiss, Defendant suggests the investigation was prompted by "one or more [H]uman [R]esources representatives [becoming] aware" of McAlpine's practice of "'changing time cards' for other employees." (Def. Mem. in Support of MTD [17-1] at 2.) Plaintiff alleges that following this investigation, she was terminated for "breaking confidentiality and falsifying timecards" and replaced by a younger manager. (Am. Compl. [8] ¶¶ 27, 28.) In fact, Plaintiff alleges, she "did not speak to any employees regarding any issues and did not violate any confidentiality of Connexus," and she altered employee timecards only at her supervisor's direction. (*Id.* ¶¶ 18, 29, 30.)

---

[1] McAlpine has not identified the persons in Human Resources who gave her this instruction. The court here spells Hubbert's name as it appears in Exhibit 1 of Plaintiff's original complaint. (*See* Email from Ariel Hubbert ¶ 1, Ex. 1 to Compl).)

McAlpine contends that Defendant terminated her as part of a cover-up: she asserts that Defendant retaliated against her and "ultimately terminated [her] for her candor regarding the improper and potentially illegal methods that were being utilized by management." (*Id.* ¶ 39.) This "candor" included reports McAlpine brought to the attention of Hubbert and "management" (she does not specifically identify these persons) that: "the execution and recording of land loans [were] not compliant with industry standards and regulations"; "construction to permanent loans were not being properly disclosed to consumers as well as improperly converted from Principal to fully amortized loans"; Defendant had not properly filed Home Mortgage Disclosure Act reports and "were not compliant with audit"; Defendant had engaged in improper advertising practices in violation of the Truth in Lending Act; and an employee had "falsified email correspondence." (*Id.* ¶¶ 34–38.)

McAlpine asserts that "[a]s soon as the incident in question occurred" (apparently a reference to the falsified email), her manager, Ms. Hubbert, told her "not to involve Human Resources." (*Id.* ¶ 40.) She alleges, further, that when McAlpine "questioned or refused to engage" in Hubbert's instructions to "underreport overtime hours and ignor[e] compliance obligations," Hubbert and "other members of management" subjected McAlpine to "targeted pressure, threats of discipline, and implied [that she faced] consequences for noncompliance, including suggestions that her refusal would 'create problems for her' at work." (*Id.* ¶ 116.) In the weeks leading up to McAlpine's termination, McAlpine further asserts, Hubbert "and other decisionmakers" isolated McAlpine "from key meetings, undermined her authority in front of subordinates, and falsely accused her of misconduct that management itself had directed." (*Id.* ¶ 117.)

McAlpine "has worked in the lending industry for thirty-three (33) years and was more than qualified for the position she held." (*Id.* ¶ 32.) Prior to her termination, her "reviews were exemplary." (*Id.* ¶ 33.) In light of her strong work performance (*id.* ¶¶ 33, 73–74) and the fact that her termination followed her recent reports regarding company misconduct (*id.* ¶ 81),

McAlpine believes "[i]t is clear that [Hubbert] sought to replace McAlpine with a younger, less knowledgeable manager that [Hubbert] would have more control over and less pushback from." (*Id.* ¶ 41). McAlpine further asserts that she was disproportionately punished and "treated differently than the other employees who were in the same level," in part because she received no opportunity for corrective action, while other managers who "were accused of unprofessional behavior" had received opportunities to correct their misconduct. (*Id.* ¶¶ 51, 53, 59, 61.)

McAlpine's FAC includes three claims. First, McAlpine alleges that Defendant discriminated against her on the basis of age, in violation of the ADEA. In support of this claim, McAlpine asserts that she filed a charge of discrimination with the EEOC on June 2, 2025, alleging "discrimination based on Retaliation and Age" and alleges that she timely filed this case within 90 days of receiving a Notice of Right to Sue from the EEOC on June 9, 2025. (*Id.* ¶¶ 8, 9.) She has not, however, attached a copy of the charge or of the right-to-sue notice to her complaint. Second, McAlpine alleges that Defendant retaliated against her in violation of Title VII, the Illinois Whistleblower Act, and the Fair Labor Standards Act. Finally, McAlpine asserts that Defendant's conduct and the conduct of its supervisory employees amount to intentional infliction of emotional distress in violation of Illinois law. (*Id.* ¶ 113.) She seeks punitive damages,[2] compensatory damages—including back pay and front pay—and attorney's fees. (*Id.* ¶¶ 11, 12, 14.)

Defendant has moved to dismiss. Defendant contends, first, that McAlpine's failure to attach her EEOC charge of discrimination or her right-to-sue letter requires dismissal of her Title VII and ADEA claims. (Def. MTD [17] at 2.) Second, Defendant contends that McAlpine's allegations under the IWA and FLSA must be dismissed because McAlpine has "failed to allege

[2] Plaintiff requests punitive damages for Defendant's alleged violations of Title VII, the IWA, and the FLSA, as well as for the common-law tort of intentional infliction of emotional distress. (Am. Compl. ¶¶ 112, 120.) The court notes that Title VII and Illinois tort law allow for the award of punitive damages in exceptional circumstances, but punitive damages do not appear to be available under the IWA or FLSA. *See* 740 ILCS 174/30; *Averett v. Chicago Patrolmen's Federal Credit Union*, No. 06 CV 4606, 2007 WL 952034 (N.D. Ill. Mar. 27, 2007) (IWA damages); *see also* 29 USC § 260 (FLSA liquidated damages provision).

engaging in any protected conduct" and "fails to identify that her termination was the result of complaining to a government agency." (*Id.* at 3.) Third, Defendant argues that McAlpine's charge of intentional infliction of emotional distress is preempted by Illinois law and is otherwise not viable. (*Id.* ¶ 4.)

## DISCUSSION

### I. ADEA

In Illinois, a plaintiff asserting a Title VII or ADEA claim must first file an administrative charge with the EEOC within 300 days of the alleged unlawful employment practice. *Chatman v. Bd. of Educ.*, 5 F.4th 738, 744 (7th Cir. 2021); *see also* 42 U.S.C. §2000e-5(f)(1). Once the EEOC gives a plaintiff notice of the right to sue via a right-to-sue letter, the plaintiff has 90 days from the letter's issuance to file her suit. *Kinder v. Marion Cty. Prosecutor's Office*, 132 F.4th 1005, 1008 (7th Cir. 2025); *see also* 42 U.S.C. § 2000e-5(f)(1). The court presumes McAlpine has met these requirements but directs her to confirm this by filing her charge of discrimination and her Notice of Right to Sue with the court within 14 days of this order. As Defendant observes, Plaintiff can proceed in federal court only on claims that were first presented in her EEOC charge or are "'like or reasonably related to the EEOC charges," meaning they "describe the same conduct and implicate the same individuals." *Hambrick v. Kijakazi*, 79 F.4th 835, 841 (7th Cir. 2023) (quoting *Reynolds v. Tangherlini*, 737 F.3d 1093, 1101 (7th Cir. 2013)).

If McAlpine can show her charge and suit are timely, McAlpine's complaint plausibly states a workplace discrimination claim under the ADEA. A complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To "set forth a prima facie case of age discrimination under the burden-shifting approach, a plaintiff must show '(1) [s]he was over forty years of age; (2) [s]he was meeting [her] employer's legitimate expectations; (3) [s]he suffered an adverse employment action; and (4) similarly situated, substantially younger employees were treated more favorably.'" *Murphy v. Caterpillar*, 140 F.4th 900, 911 (7th Cir. 2025) (quoting *Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 771–72 (7th Cir.

2002)). McAlpine's FAC adequately alleges the elements of an age discrimination suit: (1) McAlpine was over the age of 40 (Am. Compl. [8] ¶ 95); (2) she received "exemplary reviews" and "met departmental goals" (*id.* ¶¶ 32, 96); (3) she was terminated from her position for reasons that management knew to be false (*id.* ¶¶ 18, 29, 30); and (4) she was replaced by a younger employee. (*id.* ¶ 28.) She also alleges that "younger, similarly situated employees" were treated "more favorably for comparable or more serious conduct." (*Id.* ¶¶ 98, 99.) If McAlpine submits her EEOC charge and Notice to the court within 14 days and the charge includes a claim of age discrimination, the court expects the ADEA claim to proceed.

## II. Retaliation Claims

### A. Title VII Retaliation

Title VII makes it unlawful for an employer to retaliate against their employees for complaining about harassment or discrimination based on statutorily protected characteristics. 42 U.S.C. § 2000e-3(a). "Protected characteristics" under Title VII include "race, color, religion, sex, and national origin." *Id.* §§ 2000e–2(a)(1). To advance beyond the motion to dismiss stage on this claim, McAlpine must plausibly allege that (1) she "engaged in activity protected by the statute"; (2) she "suffered an adverse employment action"; and (3) the protected activity caused the adverse action. *Giese v. City of Kankakee*, 71 F.4th 582, 590 (7th Cir. 2023) (quoting *Lewis v. Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018)).

Defendant argues that McAlpine has not alleged that she engaged in protected activity covered by Title VII, and the court agrees. Title VII prohibits employers from "retaliating against employees for complaining about unlawful employment practices" that violate Title VII. *Kedas v. Ill. Dep't of Transp.*, 149 F.4th 951, 956 (7th Cir. 2025). McAlpine does not allege that she reported instances of discrimination or harassment motivated by her race, color, religion, sex, or national origin. Rather, she reported potential regulatory violations and other alleged corporate misconduct. (*See, e.g.*, Am. Compl. [8] ¶ 34.) Absent allegations that McAlpine engaged in

protected activity by reporting Title VII-prohibited conduct, her Title VII retaliation claim is dismissed.

### B. Retaliation Under the FLSA

McAlpine's claim of retaliation in violation of the FLSA fares no better. As Defendant asserts (Def. Mem. in Support of MTD [17-1] at 9), McAlpine has not alleged that she engaged in conduct protected by the Fair Labor Standards Act.

The FLSA prohibits employers from "discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding [under the FLSA], or has testified or is about to testify in any such [FLSA] proceeding, or has served or is about to serve on an industry committee." 29 U.S.C. § 215(a)(3). "To state a retaliation claim under [the FLSA], a plaintiff must plausibly allege that [s]he engaged in activity protected under the [FLSA], [her] employer took an adverse employment action against [her], and a causal link exists between the two." *Sloan v. American Brain Tumor Ass'n*, 901 F.3d 891, 894 (7th Cir. 2018) (citing *Kasten v. Saint-Gobain Performance Plastics Corp.*, 703 F.3d 966, 972 (7th Cir. 2012) (reversed on other grounds)).

McAlpine's claim stumbles on the first prong. The court assumes that internal complaints can constitute "protected activity" under the FLSA, *see Kasten*, 703 F.3d at 972, but McAlpine has not alleged that she engaged in that activity. Instead, McAlpine alleges that she "disclosed concerns regarding improper timekeeping and lending compliance practices—including violations involving the Home Mortgage Disclosure Act and Truth in Lending Act." (Am. Compl. [8] ¶ 107 (cleaned up).) A reference to "improper timekeeping" may involve FLSA violations, but without more detail, this is not obvious. And though McAlpine flagged potential violations of other federal statutes, statements of a belief "in the illegal nature of" other company conduct is "far too vague to notify a reasonable employer of a suspected violation of FLSA rights." *Sloan*, 901 F.3d at 895; *see also Miles v. Univ. of Chicago and Kyle Bowman*, 2026 WL 1785133, at *2 (N.D. Ill. June 22,

2026) ("The [FLSA] does not protect from retaliation for *any* reason—only for complaining about violations of [plaintiff's] rights protected under the [FLSA].").

McAlpine has alleged that she followed her manager's directions about time records, and that she disclosed should regulatory violations and corporate misconduct; if those violations include FLSA violations, she should make more specific allegations to that effect. Her FLSA retaliation charges are dismissed without prejudice.

**C. Retaliation Under the Illinois Whistleblower Act**

Defendant asks the court to dismiss Plaintiff's Whistleblower Act allegations as well, noting that McAlpine did not allege "that her termination was the result of complaining to a government agency." (Def. MTD [17] at 3.) The Illinois Whistleblower Act ("IWA") prohibits an employer from "retaliat[ing] against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 535 (7th Cir. 2007) (quoting 740 ILCS 174/15). At the time Plaintiff filed her complaints to management—on or before her August 2024 termination—the IWA protected employees from retaliation for making reports of misconduct to external public agencies. *Id.* In 2025, the Illinois legislature amended the IWA to broaden its protections; the Act now prohibits retaliation against employees who internally report violations of state and federal law, rules, and regulations. 740 ILCS 174/15(c). That amendment became effective January 1, 2025, however, and contains no retroactivity provision. 740 ILCS 174/99. Because all relevant events in McAlpine's FAC occurred before January 1, 2025 and Plaintiff reported the alleged misconduct only to internal personnel, Plaintiff can claim no protection under the IWA. *See Kalmick v. Curaleaf, Inc.*, No. 25 C 8893, 2026 WL 266168, at *1 n.1 (N.D. Ill. Feb. 2, 2026) (noting the parties' agreement that the version of the IWA "in effect at the time of Plaintiff's employment, and before the January 2025 amendments" applies to plaintiff's claim).

Because McAlpine's conduct on or before August 2024 did not involve disclosures of misconduct to a government or law enforcement agency, her IWA claim is dismissed.

### III. Intentional Infliction of Emotional Distress

Finally, McAlpine asserts that Defendant's conduct, through its supervisory employees including Hubbert, amounted to intentional infliction of emotional distress ("IIED"). Defendant argues that the Illinois Workers Compensation Act ("IWCA") and the Illinois Human Rights Act ("IHRA") preempt McAlpine's IIED claim, and that McAlpine's IIED claim is otherwise not actionable. (Def. Mem. in Support of MTD [17-1] at 13–14.)

#### A. Preemption

The IWCA is the exclusive state law remedy against an employer for accidental injuries sustained by an employee arising out of and in the course of her employment. 820 ILCS 305.5, 305/11. "[T]he Illinois Supreme Court has held that any claim by an employee-plaintiff is preempted by the IWCA unless one of the following exception applies: '(1) [ ] the injury was not accidental; (2) [ ] the injury did not arise from his or her employment; (3) [ ] the injury was not received during the course of employment; or (4) [ ] the injury was not compensable under the Act.'" *Santiago v. Northwestern Univ.*, No. 24 C 2058, 2025 WL 1685304, *6 (N.D. Ill. 2025) (quoting *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 564 N.E.2d 1222, 1225 (Ill. 1990)).

McAlpine brings an intentional tort claim, so the first exception applies. Illinois law holds that if an employer "or its alter ego" intentionally harms the employee, "the [IWCA] does not bar a common-law cause of action against the employer." *Kordas v. Bob's All Bright Electric, Inc.*, 2025 IL App (3d) 240482; 276 N.E.3d 1006, 1013; 488 Ill.Dec. 438, 445 (2025). When determining whether a person is an "alter ego" of a company, courts have considered: "(1) whether an individual is an officer, director, or holds an important management position; (2) whether the individual tortfeasor has an ownership interest in the defendant corporation; and (3) whether the individual has final decision making authority in that he speaks for the company." *Id.*; *see also*

*Newman v. Hansen & Hempel Co.*, No. 01 C 9871, 2002 WL 31455990, at *5 (N.D. Ill. Nov. 1, 2002).

Defendant argues that McAlpine is required to allege that the individuals responsible for tortious conduct possessed "the authority to make decisions and set policy on behalf of' the employer." (Def. Mem. in Support of MTD [8] at 6, citing *Daulo v. Commonwealth Edison* 938 F. Supp. 1388, 1406 (N.D. Ill. 1996)). But *Daulo* does not impose such a burden on a plaintiff. In general, it is the defendant who "ha[s] the burden on a motion to dismiss to establish the legal insufficiency of the complaint," *Yeksigian v. Nappi*, 900 F.2d 101, 104–05 (7th Cir. 1990), and the court is unwilling to dismiss a claim at the pleading stage on this basis. For now, the court accepts as true McAlpine's allegations that in her role as manager, Hubbert had authority to speak for the company at least on issues within the scope of Hubbert's authority. *See Newman v. Hansen & Hempel Co.,* 2002 WL 31455990, at *5 (holding that the court may infer that employees with "management capacity" represent the company). Alternatively, the court notes McAlpine's allegations that "other members of management" effectively authorized Hubbert's conduct or acted in concert with her to "isolate[]," "undermine[]" and "falsely accuse[]" McAlpine of misconduct. (Am. Compl. [8] ¶ 116–17.); *see Volling v. Antioch Rescue Squad*, 999 F.Supp.2d 991, 1003 (N.D. Ill. 2013) (collecting cases stating that management knowledge of and failure to investigate or discipline alleged misconduct is sufficient to infer the employer's express authorization). The court declines to dismiss her IIED claim as preempted by the Illinois Workers' Compensation Act.

The court also considers whether the Illinois Human Rights Act preempts the claim. Under the IHRA, "[e]xcept as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." 775 ILCS 5/8-111(D). The IHRA prohibits employers from taking adverse employment action against an individual because of the individual's age. 775 ILCS 5/2-102; *see also Gaines v. Dart*, 158 F.4th 829, 837 (7th Cir. 2025). The Act also prohibits retaliation against employees who engage in

statutorily protected activity. *Vavra v. Honeywell Int'l, Inc.*, 106 F.4th 702, 705 (7th Cir. 2024). The court therefore can exercise jurisdiction over McAlpine's IIED claim only if it is not "inextricably linked" to disability discrimination. *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 602 (7th Cir. 2006) (quoting *Maksimovic v. Tsogalis*, 177 Ill. 2d 511, 514, 687 N.E.2d 21, 22 (1997)).

There is a carve-out to IHRA preemption, however, if the challenged conduct "would be actionable even aside from its character as a civil rights violation" because the IHRA "did not furnish the legal duty that the defendant was alleged to have breached." *Naeem*, 444 F.3d at 604 (quoting *Krocka v. City of Chicago*, 203 F.3d 507, 516–17 (7th Cir. 2000) (cleaned up)). The "proper inquiry" is "not whether the facts that support [Plaintiff's] intentional infliction of emotional distress claim could also have supported a discrimination claim, but instead whether [Plaintiff] can prove the elements of intentional infliction of emotional distress independent . . . of any duties not to discriminate." *Id.* at 604–05.

Read generously, McAlpine's FAC sets forth facts extending beyond factual allegations that solely show Defendant's breach of its ADEA obligations. McAlpine does not just allege that she was fired because of her age; McAlpine also alleges that she was terminated in retaliation for her complaints about Defendant's unlawful conduct. The court notes that although she has not so labeled her claim, her allegations suggest a plausible claim of common law retaliation against Defendant. *Zurich Am. Ins. Co. v. Ocwen Financial Corp.*, 990 F.3d 1073, 1078 (7th Cir. 2021) ("It is 'the factual allegations in the complaint, and not the legal labels a plaintiff uses,' that matter.") (citing *Health Care Indus. Liab. Ins. Program v. Momence Meadows Nursing Ctr.*, 566 F.3d 689, 694 (7th Cir. 2009)).

An Illinois employer may generally fire an employee-at-will for any reason or no reason at all; however, "[a] discharged employee may sue her employer for the common law tort of retaliatory discharge if her discharge was in retaliation for certain actions that are protected by the public policy of Illinois, including retaliation for complaints about an employer's unlawful conduct." *Brandon v. Anesthesia & Pain Mgmt. Assocs., Ltd.*, 277 F.3d 936, 940–41 (7th Cir.

2002) (citing *Pratt v. Caterpillar Tractor Co.*, 149 Ill. App. 3d 588, 102 Ill. Dec. 900, 500 N.E.2d 1001, 1002 (3rd Dist. 1986); *Hinthorn v. Roland's of Bloomington, Inc.*, 119 Ill. 2d 526, 116 Ill. Dec. 694, 519 N.E.2d 909, 911 (Ill. 1988)). McAlpine has plausibly alleged that Defendant discharged her in retaliation for her alerts to management about Defendant's potentially unlawful conduct. The court thus declines to find her claim preempted by the IHRA at this stage.

**B. Merits**

Having concluded that McAlpine's IIED claim survives the preemption defense, the court addresses the merit of that claim. An intentional infliction of emotional distress claim under Illinois law requires McAlpine to plausibly allege: (1) the defendant's conduct was extreme and outrageous, (2) the defendant intended to inflict severe emotional distress or knew that there was at least a high probability that her conduct would inflict severe emotional distress, and (3) the defendant's conduct did cause severe emotional distress. *Sun v. Xu*, 99 F.4th 1007, 1013 (7th Cir. 2024). To "qualify as outrageous, the nature of defendant's conduct must be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized society." *Richards v. U.S. Steel*, 869 F.3d 557, 566 (7th Cir. 2017) (quoting *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 278 Ill. Dec. 228, 798 N.E.2d 75, 83 (2003)). An IIED claim is particularly difficult to bring in an employment setting; courts hesitate to conclude that conduct is extreme and outrageous "unless an 'employer clearly abuses the power it holds over an employee in a manner far more severe than the typical disagreements or job-related stress caused by the average work environment.'" *Id.* at 567 (quoting *Naeem*, 444 F.3d at 605).

The court concludes here, however, that McAlpine has plausibly alleged that Defendant abused its power over her. McAlpine asserts that that both Human Resources staff (albeit for now unidentified) and her manager, Hubbert, instructed her to manually alter timecards. (Am. Compl. [8] ¶ 17.) Then, Defendant used McAlpine's alterations of the timecards as an excuse to terminate McAlpine after she complained about the company's other potentially unlawful activity. (*Id.* ¶ 27.) Defendant's conduct, if proven, would extend beyond typical "job-related stress"; read

in her favor, McAlpine's complaint alleges that she followed her manager's instructions and acted responsibly in reporting misconduct, but was punished for it. This experience could well generate emotional distress, and McAlpine alleges that it did: she alleges that she "suffered severe emotional distress," including but not limited to "insomnia, weight gain, anxiety, and situational depression." (*Id.* ¶ 90.) The court denies the motion to dismiss Plaintiff's IIED claim.

## **CONCLUSION**

Defendant's motion to dismiss [17] is granted in part. Count II in McAlpine's first amended complaint is dismissed without prejudice and with leave to file an amended complaint in 14 days. Counts I and II survive this motion, but McAlpine is directed to file her Notice of Right to Sue and EEOC charge with the court within 14 days.

ENTER:

Date: September 28, 2026

REBECCA R. PALLMEYER
United States District Judge